FILED
2021 MAR -4 A II: 0?
PITT CO., C.S.C.
BY

STATE OF NORTH CAROLINA     IN THE GENERAL COURT OF JUSTICE

COUNTY OF PITT     SUPERIOR COURT DIVISION

FILE NO.: 21-CVS-_____ 579

| | | |
|---|---|---|
| ALEXANDER JOSEPH YOUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | VERIFIED COMPLAINT, TEMPORARY |
| | ) | RESTRAINING ORDER, PRELIMINARY |
| UNIVERSITY OF NORTH CAROLINA | ) | INJUNCTION AND PERMENANT |
| BOARD OF GOVERNORS, RANDY | ) | INJUNCTION |
| RAMSEY, CHAIRMAN, in his official | ) | |
| capacity, EAST CAROLINA UNIVERSITY, | ) | |
| PHILLIP D. ROGERS, CHANCELLOR, in | ) | |
| his official capacity, AND MARK STACY, | ) | |
| M.D., DEAN, BRODY SCHOOL OF THE | ) | |
| MEDICINE, in his official and individual | ) | |
| capacity, SUSAN KEEN, M.D., in her official | ) | |
| and individual capacity, and NADINE | ) | |
| SKINNER, M.D. in her official and individual | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## PARTIES

1. Plaintiff Alexander Joseph Young, ("Plaintiff Young" [1]) is a resident and citizen of

   Greenville, North Carolina and maintains his residence at 2915 Cedar Creek Road, Apt.

   1, Greenville, North Carolina 27834.

2. Defendant University of North Carolina Board of Governors ("Defendant UNC System

   Board") is the duly incorporated body politic authorized by N.C. Gen. Stat. §116-1 et

   seq., to oversee and operate the University of North Carolina post-secondary education

   system, which has seventeen (17 ) constituent institutions; it maintains a principal place

---

[1] When Plaintiff Young was expelled by Defendant Dean Mark Stacy from Defendant ECU's Brody School of Medicine in February of 2021, he was a fourth (4th) year medical student who was slated to graduate in May of 2021 with his class.

of business at 910 Raleigh Road, Chapel Hill, North Carolina 27514; and its duly listed registered agent for service of process is Andrew T. Tripp, Senior Vice President and General Counsel for UNC General Administration, who maintains an address of Post Office Box 2688, Chapel Hill, North Carolina 27515.

3.  Defendant Randy Ramsey ("Defendant Chairman Ramsey") is the Chairman of Defendant UNC System Board; is being sued in his official capacity, and maintains an address of 910 Raleigh Road, Chapel Hill, North Carolina 27514.

4.  Defendant East Carolina University ("Defendant ECU") is a constituent institution of Defendant UNC System Board; is located in Greenville North Carolina; and has a listed registered agent for service of process, Paul H. Zigas, whose address is 215 Spilman Building, East 5th Street, Greenville, North Carolina 27858-4353.

5.  Defendant Phillip D. Rogers, PhD., ("Defendant Chancellor Rogers") is the Chancellor of Defendant ECU consistent N.C. Gen. Stat. §116-34; is being sued in his official capacity; and maintains an address of 1001 E. 5th Street, Greenville, North Carolina 27858-4353.

6.  Defendant Mark Stacy, M.D., ("Defendant Dean Stacy") is the Dean of Defendant ECU's Brody School of Medicine ("BSOM") and Senior Vice Chancellor for Medical Affairs; is being sued in his official and individual capacity; and maintains an address of 600 Moye Boulevard, Greenville, North Carolina 27834.

7.  Defendant Susan Kelly Keen, M.D., Clinical Director Family Medicine for Defendant ECU's BSOM and ECU Physicians Family Medicine Center, is being sued in her official and individual capacity; and maintains an address of 101 Heart Dr, Greenville, North Carolina, 27834.

Case 4:21-cv-00029-FL   Document 1-4   Filed 03/11/21   Page 2 of 46

8. Defendant Nadine Skinner, M.D., Clinician Family Medicine for Defendant ECU's BSOM and Boice-Willis Family Medicine, is being sued in her official and individual capacity; and maintains an address of 921 North Winstead Avenue, Rocky Mount, North Carolina 27804.

## VENUE AND JURISDICTION

9. Venue is proper pursuant to N.C. Gen. Stat. §1-77 and/or§1-82 in the Superior Court of Pitt County.

10. Jurisdiction is proper pursuant to N.C. Gen. Stat. §1-75.4 as the acts or omissions of the Defendants arose in Pitt County.

## FACTS

11. Plaintiff Young was admitted to Defendant ECU's BSOM in the fall of 2017 after an exceptionally successful educational career in undergraduate studies at Howard University.

12. Plaintiff Young is an African American male.

13. Plaintiff Young has been identified as having the following disabilities: a documented developmental disorder of speech and language, [ICD code F80.9] and mixed receptive expressive language disorder [ICD code F80.2], which is an unspecified language processing disorder that neurologically affects oral communication, Attention Deficit Hyperactive Disorder ("ADHD"), and Irritable Bowel Syndrome ("IBS").

14. Plaintiff Young disclosed the above-referenced speech and language expressive disabilities and his ADHD to Defendant ECU's Disability Support Services ("DSS") in

Case 4:21-cv-00029-FL   Document 1-4   Filed 03/11/21   Page 3 of 46

2017, after being admitted to the BSOM; he subsequently disclosed the IBS in the Fall of 2019 to DSS and Student Affairs upon starting Year 3.

15. Upon information and belief, Plaintiff Young provided DSS with copies of his IEP from high School and his neurological assessment in 2017.

16. The BSOM at Defendant ECU has a three-fold mission upon which it was founded: to increase the supply of primary care physicians serving the state, to improve the health status of eastern North Carolina's citizens, and **to enhance access of minority and disadvantaged students to a medical education**. (Emphasis added.)

17. Defendant UNC System Board and Defendant ECU, as a constituent institution, are capable of suing and being sued pursuant to N.C. Gen. Stat. §116-3, and is further permitted to and upon information and belief, does maintain liability insurance and/or participates in a self-directed risk pool, which, upon and belief, waives their assertion of sovereign immunity to the extent of the limits provided therein.

18. Plaintiff Young has been provided accommodations by Defendant ECU between 2017 and 2020 for his disabilities during the classroom portion of his education with such accommodations as extended time for scheduled tests, quizzes, and exams (time and ½) and low distraction environments for tests, quizzes, and exams speech and language expressive disabilities and his ADHD; in addition to the foregoing, in the Spring of 2021 Defendant ECU added frequent bathroom breaks to his letter of disability for IBS.

19. The letters of disability did not disclose what disabilities were identified; only the accommodations with a statement that the professor may offer other appropriate accommodations in their discretion.

Case 4:21-cv-00029-FL   Document 1-4   Filed 03/11/21   Page 4 of 46

20. Notice of Plaintiff Young's disabilities for accommodations had clearly been communicated to Defendant ECU's BSOM, as Cassandra "Sandy" Acheampong, Ph.D., LPC, Interim Assistant Dean for Student Development and Academic Counseling, Learning Skills Specialist and Secretary of the North Carolina Counseling Association Office of Student Development and Academic Counseling with the BSOM, and Timothy Reeder, M.D., MPH, Executive Vice Chair Department of Emergency Medicine and Director of Health Care System Transformation and Leadership Distinction Track for BSOM, assisted Plaintiff Young with the receipt of accommodations for the USMLE Step 1 examination administered by the National Board of Medical Examiners ("NBME").

21. Dr. Timothy Reeder wrote in his December 20, 2018 letter of support for testing accommodations related to the USMLE Step 1 examination:

> Through this program ["Leaders in INnovative Care"] I have had the opportunity to spend considerable time with Alex. In this time, **I have observed his difficulty with language skills. He takes longer than his peers reading material and processing this for group discussion. It is apparent that he has tremendous intellectual abilities, but he struggles to convey his thoughts in both written and verbal communication. When given time, he is able to develop and compose his thoughts commensurate with his peers.** This difficulty will likely be encountered during standardized test. (Emphasis added.).

22. However, Defendant BSOM refused to make any reasonable accommodations for Plaintiff Young in his clinical programs during the M3 and M4 academic years.

23. After completion of Plaintiff Youngs first clinical course it was apparent that his disabilities precluded him from accessing the education being provided during his clinical courses without reasonable accommodations.

24. More specifically, his unspecified neurological disorder that affected his language processing impacted his ability to provide oral presentations in a rapid pace as anticipated by the clinicians grading him.

25. The IBS also caused Plaintiff Young to be late to less than a handful of clinical rotations and other classes due to the uncontrollable and urgent need to relieve himself in the bathroom as a result of the syndrome.

26. Plaintiff Young used his best efforts to arrive early to clinic rotations and classes, which were noted by his some of his professors, however since none of his professors were informed by Defendant ECU of his IBS some of his professors improperly noted his tardiness as unprofessional behavior.

27. Although Plaintiff Young disclosed and provided documentation of his disabilities to the Director of DSS, Stephen J. Gray, and to the Associate Dean of Student Affairs and Clinical Associate Professor of Family Medicine, Dr. Susan Schmidt, no formal written plan was prepared to assist him during his M3 academic year.

28. Plaintiff Young was told by Dr. Schmidt that they would evaluate his need on a case-by-case basis.

29. Upon information and belief, Stephen Gray told Dr. Schmidt that he could not interfere with the administration of the clinical program or impose accommodations in the clinical program because he "did not have the knowledge base [of] your [the clinical program's] technical standards."

30. The BSOM states that students admitted must meet the technical standards by having sufficient abilities and skills in several essential areas, which include, but are not limited

to: (1) attitudinal and emotional characteristics, (2) interpersonal and behavioral proficiencies, (3) comprehension and communication capabilities, (4) visual, auditory, and other sensory competencies, (5) procedural and manipulative potentials, and (6) high ethical standards which value diversity and respect for all.

31. Upon information and belief, Dr. Schmidt did not appear to understand what type accommodations could be made in the clinical program based on the technical standards and asked for a copy of DSS's letter of disability eligibility to share with the committee meeting the following week; the letter did not outline the requisite technical standards.

32. Dr, Schmidt advised Plaintiff Young that accommodations would have to be made on a case-by-case basis.

33. Dr. Schmidt also advised Plaintiff Young that she would get back to him about potential accommodations in light of his identified disabilities.

34. On or about January 24, 2019, Plaintiff Young informed Dr. Schmidt by email that "I wanted to ask that when explaining my circumstances to the board of promotion, that my diagnosis of ADHD remain confidential. As far as needing to use the restroom or use of mental health services, I do not mind if you shared this information with individuals as you'd deem appropriate."

35. After several weeks of no response, Plaintiff Young sought to develop his own accommodations by attempting to develop a template that he could modify and read, which answered the most common questions or information to be presented for the subspeciality clinic he was attending at the time.

36. Plaintiff Young also sought assistance from a University Speech Communications Department, Pamela Hopkins, Ph.D., Technical and Professional Discourse, M.A. Speech Communications, on his own regarding his language processing disorder that caused him to repeat sentences and pause during speaking and making presentations; upon information and belief Dr. Hopkins is not a licensed speech therapist.

37. Dr. Hopkins shadowed Plaintiff Young during morning rounds, and also observed his OSCE recordings, and provided recommendations on how to best improve.

38. Plaintiff Young further sought the assistance of Cassandra "Sandy" Acheampong, Ph.D., LPC, Interim Assistant Dean for Student Development and Academic Counseling, Learning Skills Specialist and Secretary of the North Carolina Counseling Association Office of Student Development and Academic Counseling with the BSOM.

39. Plaintiff Young reached out to  Dr. Patrick Merricks, OSCE Manger, between January 29, 2020 and August 26, 2020, for assistance to access the education in the clinical rotation in the same manner as his non-disabled peers without meaningful accommodations from Defendant ECU.

40. In Plaintiff Young's quest for assistance, he reached out to Dr. Cedric M. Bright, Associate Dean for Admissions BSOM and Professor of Medicine,, and Dr. Kendal M. Campbell, Senior Associate Dean, Director of the Research Group for Underrepresented Minorities in Academic Medicine, on multiple occasions in attempts to devise methods that would help him develop accommodations for the clinical rotations that would reasonably compensate for his disabilities without materially altering the clinical programs.

Case 4:21-cv-00029-FL   Document 1-4   Filed 03/11/21   Page 8 of 46

41. Plaintiff Young spent hours trying to develop individualized templates for each subspeciality clinic, which interfered with his time to study.

42. On or about August 12, 2019, Plaintiff Young told Stephen Gray by email that "I am comfortable with you sharing with Dr. Schmidt in any way that would best advocate on my behalf," when checking back in with DSS regarding the lack of progress in receipt of accommodations from Dr. Schmidt since their January 2019 communication.

43. Plaintiff Young told Dr. Schmidt to use her discretion in disclosing his disabilities.

44. Upon information and belief, Dr. Schmidt never disclosed Plaintiff Young's disabilities to any of the attending physicians, professors, or residents grading Plaintiff Young during his clinical rotations.

45. One physician, Dr. David Gilbert, commented on the Family Medicine Clinical Evaluation that **"I got the impression that he was relying heavily on the framework/template of his notes for his presentation,"** which was seen as evidence supporting a failing grade in the course by other evaluators, however, after he learned of Plaintiff Young's disability he described Young's usage of a template in his letter of support as follows **"At the time I was not aware of any specific processing disability but based on my observations and interactions his use of templates and notes would have been my recommendation.** " (Emphasis added.)

46. Upon information and belief, after-the-fact Dr. David Gilbert believed that the use of the template was a reasonable accommodation for Plaintiff Young based upon his disability that its use did not fundamentally alter the purpose of the clinical program.

Case 4:21-cv-00029-FL   Document 1-4   Filed 03/11/21   Page 9 of 46

47. Unfortunately, Plaintiff Young was not received well by all the clinical assessors when he approached them about developing a template for their clinical subspecialities such as Internal Medicine and Psychiatry.

48. Without a formal written plan identifying appropriate accommodations in the clinical subspecialities, Plaintiff Young was left with little to no support that would ensure he would be provided an equal opportunity to access the education in the same manner as his non-disabled peers.

49. In September of 2020, Defendant ECU initiated the process of recommending Plaintiff Young's expulsion from the BSOM in part because he allegedly " was not making sufficient progress in his clinical presentations."

50. In October of 2020, Plaintiff Young was starting his fourth (4th) and final year of medical school.

51. Plaintiff Young was denied the opportunity seek residency opportunities like his non-disabled peers as a result of the recommendation of expulsion, which was primarily based upon his inability to progress in the clinical setting related to oral presentations.

52. Plaintiff Young's grades in his clinical rotations during his M3 year prior to September of 2020 are:

|   |   |   |   |
|---|---|---|---|
| a. | Internal Medicine | June 3, 3019 – July 26, 2019 | Grade C |
| b. | Psychiatry | July 29, 2019 – September 6, 2019 | Grade C |
| c. | Surgery | September 23, 2019 – November 15, 2019 | Grade B |
| d. | Family Medicine | November 18, 2019 – January 31, 2020 | Grade B |
| e. | Obstetrics-Gynecology | February 3, 2020 – March 13, 2020 | Grade B |

f. Pediatrics        June 29, 2020 – August 7, 2020        Grade A

53. Upon information and belief, the clinical portion of the rotations made up between twenty percent (20%) and forty percent (40%) of the total grade while OSCE made up between twenty percent (20%) and thirty percent (30%) of the total grade.

54. Upon information and belief, the objective meaning of the foregoing grades demonstrate that Plaintiff Young made significant progress in his presentations beginning with Internal Medicine in July of 2019 and ending with Pediatrics in August of 2020.

55. Internal Medicine his first clinical rotation noted that "[s]everal reviewers noted that Alexander needed to work on his presentation skills and that he seemed to have presentation anxiety," and that "[d]ifficulty with presentations was a theme among the reviewers."

56. Upon information and belief, Internal Medicine was initiated without a template and without any other reasonable accommodation or information to the physicians , attendings, and residents assessing Plaintiff Young as they did not know of his disabilities and neither DSS nor Dr. Schmidt made any reasonable effort to determine whether a reasonable accommodation could be made for Plaintiff Young's oral communication and language processing disorder on a case-by-case basis as stated earlier.

57. However, after one year, Pediatrics the last clinical course under review relevant to this action noted that Plaintiff Young " .. was professional in all of his interactions with team members and parents. … [exhibited] cohesive knowledge and management. His notes were thorough. … encouraged him to expand his differential for each patient. … He will do exceedingly well in any area of medicine he chooses."

58. Neither Defendant ECU through the BSOM, DSS, nor Dr. Schmidt had made any official accommodations for Plaintiff Young's identified and documented disabilities as late as August of 2019 for the clinical programs.

59. Defendant ECU's BSOM SOP# 10.5.2, Version 2, effective April 1, 2018 states that a director for the clinical programs and DSS shall make "accommodations for students with physical disabilities affecting their ability to work in a clinical environment," with respect to ADA accommodations.

60. Plaintiff Young's demonstrated improvement in oral communication and clinical case presentation was through his own dogged efforts to obtain help from anyone who would assist him in developing and utilizing a reasonable accommodation.

61. However, even with Plaintiff Young receiving an "A" Pediatrics, he still did not and does not to this day have an official accommodation from Defendant ECU addressing his oral communication and language processing disorder.

62. Moreover, while Plaintiff Young was participating in the Family Medicine clinical program, the Clinical Director, Dr. Susan Keen, and the Assessing Physician, Dr. Nadine Skinner, worked in concert to give Plaintiff Young an "F" in the Family Medicine clinical program held from November 18, 2019 to January 31, 2020.

63. Plaintiff Young was forced to file a grade appeal to Dr. Susan Keen who summarily upheld the failing grade.

64. Plaintiff Young was forced again to file an appeal of the grade appeal made to Dr. Susan Keen to the Chair of the Department of Family Medicine.

Case 4:21-cv-00029-FL   Document 1-4   Filed 03/11/21   Page 12 of 46

65. In each appeal, Plaintiff Young noted that Dr. Nadine Skinner inquired about his lapel pin which he received for completing training from Defendant ECU's Safe Zone program related to the LGBTQ community.

66. Upon information and belief, after seeing the Safe Zone lapel pin Dr. Skinner changed her perspective on Plaintiff Young's performance in the clinic, as Dr. Skinner inquired about Plaintiff Young's sexual orientation during a telephone call with Dr. Keen and, upon information and belief, discussed Plaintiff Young's sexual orientation and demeanor with other staff within the clinic.

67. Upon information and belief, Dr. Skinner wrote in Plaintiff Young's evaluation that nurse under her charge asked whether Plaintiff Young was "on the autism scale;" for her part Dr. Skinner stated that "something was off" about Plaintiff Young after their first encounter.

68. Upon information and belief, Dr. Skinner, herself, admitted to the belief that she thought Plaintiff Young had a "developmental disorder," took the time investigate Plaintiff Young's past and shared her findings with Dr. Keen and even wrote at the top of her emailed final evaluation that "something was off."

69. Upon information and belief, after Dr. Skinner observed the LGBTQ lapel pin, she stopped allowing Plaintiff Young to participate in patient interactions and near the end of the rotation advised Plaintiff Young that she did not feel she needed to teach him because he presented below her expectations.

70. Upon information and belief, Dr. Skinner subsequently gave Plaintiff Young a negative evaluation at the conclusion of the clinic.

71. Upon information and belief, Dr. Keen subsequently, intentionally improperly modified the manner in which she graded Plaintiff Young in comparison to the other third (3rd) year medical students taking the Family Medicine clinic for the express purpose of ensuring his failure of the course.

72. Upon information and belief, Dr, Skinner and Dr. Keen took these negative actions primarily because of Plaintiff Young's perceived sexual orientation based upon the wearing of a lapel pin from Safe Zoning training, which is sponsored by Defendant ECU"s BSOM, Vice Chairs of Diversity and Inclusion, which "is comprised of departmental representatives who are committed to creating and maintaining a culture of inclusion at the BSOM."

73. Plaintiff Young personally recalls Dr. Skinner saying to him, "You're soft spoken and should practice speaking up," which Plaintiff Young took in context to reflect upon perceived his sexual orientation.

74. Upon information and belief, Plaintiff Young was humiliated, belittled and publicly ridiculed by the very people, Dr. Keen and Dr. Skinner, who were charged with educating him in the field of Family Medicine.

75. Defendant ECU's BSOM's Code of Professional Conduct Revised March 2017, states that "A medical student cannot be compelled to perform procedures or examinations which he or she feels to be detrimental or unethical, should be challenged to learn, **but should not be abused or humiliated in front of patients, peers or other health team members may not be discriminated against on the basis of gender, race or religion."** (Emphasis added.).

Case 4:21-cv-00029-FL   Document 1-4   Filed 03/11/21   Page 14 of 46

76. Plaintiff Young met with Dr. Keen on January 22, 2020 to discuss performance and to discuss the fact that he was not being given sufficient opportunities to meet with chronic patients during the Family Medicine clinical rotation with Dr. Skinner; he was singled out as the only student that solely saw acute upper respiratory walk-ins and other minor acute patients.

77. After the reporting of the grade, Plaintiff Young spent several months challenging the blatantly bias and detrimental grade of "F" given by Dr. Keen and supported by Dr. Skinner's biased evaluation.

78. Plaintiff Young wrote correspondence appealing the grade on March 11, 2020 and March 30, 2020.

79. Plaintiff Young sought review of the evaluation from Dr, Skinner, which was a part of his educational record and initially that request was denied by Dr. Keen during a February 19, 2020 meeting.

80. Upon information and belief, it took approximately thirteen (13) days for Dr. Keen to provide the emails.

81. However, the delay in providing the evaluation adversely impacted Plaintiff Young's ability to adequately defend himself during the grade appeal.

82. In the summary of information Dr. Keen did provide prior to Plaintiff Young's submission Dr. Skinner falsely described Plaintiff Young as "lazy at times" and that he "[c]annot be found at times."

Case 4:21-cv-00029-FL   Document 1-4   Filed 03/11/21   Page 15 of 46

83. As an African American male Plaintiff Young is all too familiar with this common stereotype and the evidence provided in his appeal adequately rebuts this trope; no other evaluator found Plaintiff Young to be "lazy."

84. Moreover, Dr. Skinner stated that Plaintiff Young could not be found at times, however, this is a reference to Plaintiff Young's disability associated with IBS, which reasonable accommodations were not being made as Plaintiff Young's identified medical condition was being used as a basis to decrease his evaluation performance.

85. Plaintiff Young met with Dr. Acheampong and Dr. Bright, throughout this ordeal trying to determine how to traverse the mine field placed before him by Defendant ECU's faculty for the Family Medicine clinic while continuing his studies.

86. Upon information and belief, the difficulty associated with the Family Medicine clinic grade based upon his perceived sexual orientation and the ongoing lack of accommodation for Plaintiff Young's identified disabilities caused significant additional unwarranted stress, anxiety, and sleeplessness upon Plaintiff Young that other similarly situated third (3rd) year medical students were not subjected to while attending BSOM.

87. Plaintiff Young sought and received counseling for the stress associated with the discriminatory treatment he received during his tenure at Defendant ECU's BSOM.

88. Plaintiff Young's appeal of the Family Medicine clinical grade appeal was before the Chair of the Department of Family Medicine for Defendant ECU's BSOM, Chelley Alexander, M.D., in July of 2020.

89. Plaintiff Young was scheduled to take the OSCE examination on or about July 17, 2020.

90. Dr. Alexander scheduled an in person meeting with Plaintiff Young on July 16, 2020 to discuss and review his grade appeal in the Family Medicine clinical course.

91. Plaintiff Young prepared an exhaustive defense of his grade and narrative of the treatment received from Defendant Dr. Keen and Defendant Dr. Skinner.

92. Upon information and belief, Dr. Alexander has not reviewed the information due to an apparent technical glitch prior to meeting with Plaintiff Young on July 16, 2020.

93. During the July 16, 2020, grade appeal Plaintiff Young orally disclosed some of the information contained in his written appeal to Dr. Alexander.

94. Dr. Alexander took the matter under advisement and required Plaintiff Young to return for another meeting after the review of his grade appeal brief.

95. Plaintiff Young was required to return for another appeal hearing to decide the fate of his Family Medicine clinical grade on July 22, 2020.

96. Plaintiff Young was so distraught by the appeal process and the discriminatory treatment perpetrated against him by the faculty of Defendant ECU that he could not focus much less properly prepare for and take the July 17, 2020 OSCE exam.

97. Upon information and belief, the OSCE exam was offered between July and August of 2020.

98. Plaintiff Young was at his wits end as a result of the differential treatment he received from the employees of Defendant ECU.

99. On July 22, 2020, Dr. Alexander and Plaintiff Young conducted the follow up hearing for the grade appeal for the Family Medicine clinical course.

100.     Shortly thereafter Dr. Alexander issued a decision regarding Plaintiff Young's Family Medicine clinical grade appeal.

101.     Dr. Alexander's decision of July 22, 2020, noted the following:

> I have decided to overturn your failing grade for the Family Medicine Clerkship. Family Medicine has a grading rubric which is used to grade all students completing the clerkship. **In your case, the clerkship director elected to choose a grade different tha[n] the grade you earned according to our grading rubric.** I have therefore elected to overturn your failing grade and give you a passing grade for the clerkship.
>
> **I have also decided to negate the evaluation by Dr. Skinner. You have given ample evidence that her evaluation is an outlier, and because you have evidence that this is due to bias, I would like this evaluation removed from your file and taken out of the calculation for your final grade. I would also like her comments removed from your MSPE and any additional comments for other reviewers added.** (Emphasis added.).

102.     Dr. Alexander's determination ultimately resulted in Plaintiff Young receiving a corrected grade of "B" in the Family Medicine clinical course.

103.     Unfortunately for Plaintiff Young, upon information and belief, his successful grade appeal for the Family Medicine clinical course was the talk of Defendant ECU's BSOM among staff and students, alike.

104.     Upon information and belief, Dr. Keen was so irate over Plaintiff Young's successful grade appeal that she is no longer working in a clinical capacity and has articulated her dismay that Plaintiff Young remains a medical student with Defendant ECU's BSOM to other staff members.

105.     Upon information and belief, acting upon the biases demonstrated by Dr. Keen, the staff of Defendant ECU's BSOM began the process seeking to terminate Plaintiff Young's medical school career, which began with the Promotion and Review Committee

Case 4:21-cv-00029-FL   Document 1-4   Filed 03/11/21   Page 18 of 46

that, upon information and belief, Dr. Keen resigned, quit or was removed from after her protest of Plaintiff Young's successful grade appeal.

106.    At the September 23, 2020, Promotion and Review Committee ("PRC") Meeting for Defendant ECU's BSOM it was noted that Plaintiff Young had an unexcused absence from the 10 station OSCE, which he was scheduled to take on or about July 17, 2020.

107.    The PRC noted that the unexcused absence was a violation of section II, A.9 of the code of student conduct.

108.    Upon information and belief, the alleged unexcused absence from the 10 station OSCE exam forms the second basis for the recommendation to remove Plaintiff Young from Defendant ECU's BSOM.

109.    On or about January 7, 2021, Plaintiff Young sought copies of his educational records including the material attached to the September 23, 2020, PRC Meeting minutes related him as stated in the minutes "...summary of concerns were brought forward regarding student code of conduct issues in attachment sent prior to meeting."

110.    Upon information and belief, the September 23, 2020 vote to recommend dismissal of Plaintiff Young from BSOM, the subsequent October 7, 2020 correspondence formally noticing the recommended dismissal, and the subsequent hearing on the appeal of the dismissal on January 23, 2021, Plaintiff Young did not receive the "summary of concerns" sent in an email prior to the September 23, 2020 PRC meeting that form the basis for the recommendation of his dismissal.

111.    The failure of Defendant ECU to provide Plaintiff Young with this vital information prior to the appeal severely hampered Plaintiff Young ability to effectively

mount a meaningful appeal given that the email sent prior to September 23, 2020 formed

the basis for the recommendation and vote by the PRC to expel Plaintiff Young BSOM.

112.    During the PRC meeting according to the minutes there was no discussion of the

impact that the discriminatory treatment visited upon Plaintiff Young by Dr. Skinner and

Dr. Keen had on his missed July 17, 2020, 10 station OSCE exam.

113.    As previously stated, Dr. Alexander required Plaintiff Young to meet the day

before the scheduled exam to defend his grade in Family Medicine.

114.    Because Dr. Alexander had not received and/or reviewed Plaintiff Young's

exhaustive written response on July 16, 2020, Plaintiff Young was forced to deal with the

threat of repeating third (3rd) year course Family Medicine or repeating the entire third

(3rd) year prior to taking the 10 station OSCE exam on July 17, 2020, while having to

deal with the stress of Dr. Alexander's continuance of the grade appeal meeting until July

22, 2020.

115.    Upon information and belief, this was an untenable position for Plaintiff Young to

be placed and resulted in him being placed in a position different from his peers through

no fault of his own due to the discriminatory treatment of Dr. Keen and Dr. Skinner.

116.    Plaintiff Young took the 10 station OSCE examination on or about August 13,

2020, while the examination, which was an open enrollment examination, was still be

offered.

117.    Yet, Defendant ECU's BSOM circumvented its own policy for addressing an

allegation of a violation of the Code of Student Conduct by skipping the process outlined

in the code when a violation is alleged.

118. ARTICLE II: AUTHORITY FOR "CODE OF STUDENT CONDUCT" states the following:

    1. The Dean of the School of Medicine and the Dean for Student Affairs shall be responsible for appointing the **Professional Conduct Committee** and Appellate Board, if necessary, to hear each case. (Emphasis added.).

    2. A **Professional Conduct Committee** or Appellate Board **shall be composed of six members representative of the School of Medicine community. Three student members and three faculty members shall be selected by the Dean of the School of Medicine and the Dean for Student Affairs to hear a particular case.** At least two faculty members should be tenured and there should be at least one M.D. faculty representative and one Ph.D. faculty representative on a Professional Conduct Committee or Appellate Board. Student members eligible for appointment to a Professional Conduct Committee will be elected annually by members of the M2-M4 class (two students per class plus one alternate). (Emphasis added.).

119. Upon information and belief, at no time did Defendant ECU follow its own policies and procedures with respect to review of an alleged Code of Conduct violation by a BSOM student, in that Plaintiff Young was never afforded an opportunity to have the Professional Conduct Committee, which is inclusive of two medical school students hear and render a decision as to whether a violation of the code of conduct and/or standards of professionalism had occurred in light of the circumstances with respect to the taking of the 10 station OSCE examination in July of 2020.

120. The failure of the Professional Conduct Committee to be permitted to review and consider the totality of the circumstances and render a determination violated Plaintiff Young procedural and substantive due process rights.

121. Upon information and belief, the PRC impermissibly imposed its judgment with respect to an alleged violation of the Code of Conduct which had not been proved

pursuant to the duly authorized process and subsequently formed a basis for the recommendation of expulsion from the BSOM.

122.    This substantive and procedural violation with respect to the alleged Code of Conduct violation was used by the Appellate Review Board and Defendant Dean Stacy in making their respective recommendation to uphold the expulsion and to expel Plaintiff Young from the BSOM of medicine on February2, 2021 and February 3, 2021, respectively.

123.    The PRC meeting on September 23, 2020 improperly determined that Plaintiff Young should be dismissed from Defendant ECU's BSOM because at the time of the determination he was a student in "Good Academic Standing," which describes a student whose record at the time of determination shows no unremedied "F" grades for any course completed.

124.    The "F" received by Plaintiff Young in the Family Medicine clinical course was overturned on July 22, 2020 and as of September 23, 2020, Plaintiff Young was a student in "Good Standing."

125.    The PRC meeting on September 23, 2020 improperly considered communications from the PRC dated January 7, 2019 during year 2 and letters from Dr. Tim Reader related to Plaintiff Young's participation in the LINC Distinction Track dated July 9, 2019 and August 12, 2019, respectively.

126.    Dr. Reader's letters discussed the difficulty Plaintiff Young was having with respect to balancing participation in the LINC Distinction Track and focusing on the regular medical school curriculum.

127.	Because the LINC Distinction Track participation was voluntary and not a requirement for completion of medical school, it was decided that Plaintiff Young should focus on meeting the demands of medical school and be withdrawn from the LINC Distinction Track at the conclusion on year 2.

128.	As for the PRC Year 2 Letter of January 7, 2019, it focused on instances of tardiness by Plaintiff Young related to certain courses and assignments.

129.	The PRC for Year 2 did not address the basis the tardiness, which primarily included issues associated with Plaintiff Young's identified disability, IBS.

130.	Plaintiff Young conceded to the PRC in Year 2 that he had overslept on occasion and had failed to timely turn in at least two (2) assignments in HUMS 6400.

131.	However, as noted in the correspondence, "penalties" were assessed by the professor and the letter was written to place Plaintiff Young on notice of "professionalism" concerns during year 2.

132.	The PRC for Year 2 went on to say that **"[t]he purpose of this letter is not to escalate any additional sanction**, but rather to remind you today of the Brody School of Medicine Code of Professional Conduct and Code of Student Conduct. … It is our expectation that you will attend mandatory class sessions (including arriving on time) and submit assignments on or before the due date." (Emphasis added.).

133.	The PRC for Year 2 approved the promotion of Plaintiff Young to year 3.

134.	During year 3, tardiness and timeliness were not significant issues save clinical evaluators such as Dr. Skinner failing to accommodate Plaintiff Young's IBS as

identified in the accommodations letter issued by the DSS, which provided for frequent bathroom breaks as a reasonable accommodation.

135.    Defendant ECU's BSOM standard for dismissal from the medical school is as follows:

> Academic Dismissal Process. The recommendation for dismissal of a student from the School of Medicine will be made by the Student Review and Promotion Committee of the specific year in which the student officially is enrolled. A student **may be considered for dismissal** by the Committee **if that student: Fails three courses within a curriculum year; has not satisfactorily completed a course previously failed; or whose knowledge, competencies and personal characteristics have not achieved, in the judgment of the Committee, a satisfactory level of development and integration to justify continuing him/her as a reasonable candidate for the M.D. degree.** If a second "F" is received after completing remediation for a course in which an "F" was received the first time, it is grounds for automatic dismissal subject to the student, by means of appeal, showing cause why automatic dismissal is not justified. (Emphasis added.).

136.    At the time of the determination by the PRC on September 23, 2020, Plaintiff Young was a fourth (4th) year medical student in "Good Standing."

137.    Defendant ECU improperly convened a PRC on September 23, 2020 composed of MS and M4 faculty members in violation of its stated policy.

138.    Plaintiff Young had not failed three courses with a curriculum year, whether considering year 3 or year 4 of medical school.

139.    During Year 3, Plaintiff Young had successfully challenged the grade of "F" in Family Medicine due to discrimination and bias as found by Dr. Alexander on July 22, 2020 for which the grade was changed to a "B" upon implementation of the appropriate rubric.

140.     The Appeals Committee recommendation of February 2, 2021 inappropriately

cited the alleged lack of professionalism by Plaintiff Young and inappropriately meet as a

body from 1:00 p.m. to approximately 1:40 p.m., to discuss and consider Plaintiff

Young's case prior to the record hearing.[2]

141.     However, the incidents of concern in Year 2 related to the LINC Distinction

Track, tardiness related to the documented disability, IBS, and the failure to turn in an

assignment on time during year 2 did not rise to the level of the PRC for Year 2 from

preventing the advancement of Plaintiff Young to Year 3.

142.     In fact, the PRC for Year 2 specifically noted that "[t]he purpose of the letter is

not to escalate or indicate any additional sanction;" furthermore, Plaintiff Young was

promoted by the PRC in Year 3 to Year 4.

---

[2] It should be noted that on or about January 3, 2021, Plaintiff Young was notified by Dr. Kimberly Ann Alford, Clinical Director for Emergency Medicine, that he would be receiving an "F" for the Emergency Medicine Clinical course. The transcript used by the Appeals Committee denoted this grade although the day before the hearing University Counsel emailed Plaintiff Young's Counsel stating that this grade would not be considered by the Appeals Committee in making a recommendation. Plaintiff Young discloses this issue because procedural violations have been identified in the ongoing appeal of this grade. Plaintiff Young believes this grade is subject to accommodations concerns as well, but was not afforded the opportunity by Dr. Alford to review the narrative of the evaluators, which are routinely placed online upon the posting of the grades. Dr. Alford refused to place the narratives online and would only permit Plaintiff Young to review them in office with her but communicated by email that such review could not occur prior to the original filing of his written statement to the Appeals Committee filed on or about January 13, 2021. Plaintiff Young addressed this grade in his original statement on appeal because notice that the pending grade challenge for Emergency Medicine would not be a part of the Appeals Committee's review was not provided before the originally scheduled hearing date of January 14, 2021. Defendant ECU postponed the hearing on January 13, 2021 until January 27, 2021. Subsequently, Defendant ECU postponed the hearing again from January 27, 2021 to January 29, 2021 and on January 28, 2021, the day before the hearing Defendant ECU disclosed their intent to not include the Emergency Medicine grade in the Appeals Committee review. Defendant ECU's BSOM SOP and its custom and practice required that the narratives of evaluators be provided online for student review at the time of the posting of the grade. Again, in this instance Plaintiff Young was not afforded due process as other similarly situated medical students. The Appeals Committee was improperly forced to pretend they did not see the grade on the transcript that is the subject of a grade challenge and to ignore the explanation for the challenge contained in Plaintiff Young's original statement of January 13, 2021, as he was advised by Amanda Helen Williams, Interim Deputy University Counsel for Health Services and Dr. Benjamin J. Copeland, Interim Associate Dean of Student Affairs, that the grade and complete transcript would be considered by the Appeals Committee orally and via email on or about January 8, 2021.

143.    Moreover, the Appeals Committee improperly considered an alleged violation of the Code of Student Conduct that had not been substantiated by the Professional Conduct Committee consistent with the due process requirements afforded in the Code of Conduct.

144.    The Appeal Committee further cites "the lack of satisfactory progress consistent with our expectations of a future physician."

145.    However, at the time of review, Plaintiff Young's third year grades were Internal Medicine Grade C, Psychiatry Grade C, Surgery Grade B, Family Medicine Grade B, Obstetrics-Gynecology Grade B, and Passing grades for all other non-clinical required courses.

146.    According to the Student Grading and Promotion Policy grades are assigned as follows:

• A (EXCELLENT) - The grade reserved for a student whose performance in a course, clerkship or other learning experience is clearly outstanding. This grade is awarded to a student demonstrating intellectual curiosity and competence that sets him/her apart.
• B (GOOD) - The grade given to a student whose performance in a course, clerkship or other learning experience clearly exceeds the minimal requirements established by a department or course faculty.
• C (SATISFACTORY) - The grade given to a student whose performance in a course, clerkship or other learning experience meets the minimal requirements established by a department or course faculty.
• F (FAILURE) - A failing grade given to a student whose performance in a course, clerkship, or other learning experience does not meet the minimal requirements established by the department or course faculty awarding the grade.
• P (PASS) - The grade given to a student who successfully completes the requirements in skill courses which utilize a PASS/FAIL system of evaluation.

147.    Plaintiff Young met all the competencies established by Defendant ECU's BSOM, in that he was a student in good standing with grades ranging from A to C in the clinical program of year 3 and Passing for all other objective criteria and examinations.

148.     The Appeals Committee recommendation and Defendant Dean Stacy's affirmation for dismissal thereof are arbitrary and capricious in that the decision is based upon "[h]is knowledge and competencies have not achieved a satisfactory level of development and integration in the clinical environment to justify his continued enrollment in the MD Program at the Brody School of Medicine."

149.     By definition the PRC, Appeals Committee and Defendant Dean Stacy improperly applied the grading standards to Plaintiff Young in making the dismissal determination.

150.     The fact that Plaintiff Young's grades range from satisfactory to excellent indicate that he had achieved and demonstrated sufficient knowledge and competencies in the integration of the clinical environment, otherwise he would have failed the clinical courses utilized in the determination of his final grades especially when the clinical portion of the overall grade makes up between twenty percent (20%) and forty percent (40%).

151.     Contrary to Defendant ECU's BSOM and Defendant Dean Stacy's final determination, Plaintiff Young demonstrated marked improvement throughout the course of his clinical experience with the progressively improving clinical grades.

152.     He began his clinical career in Year 3 by making 2 "Cs"; he followed that up by making 3 "Bs"; and he concluded his efforts by making a final "A."

153.     In fact, in the final clinical course subject to review, the clinical evaluator stated that Plaintiff Young "[Exhibited] cohesive knowledge and management. His notes were thorough," and that "He will do exceedingly well in any area of medicine he chooses."

Case 4:21-cv-00029-FL   Document 1-4   Filed 03/11/21   Page 27 of 46

154.    By any measure, the improvement across subspecialities is clear and unmistakable.

155.    By affirming the recommendation of the Appeal Committee, Defendant Dean Stacy has affirmed the discriminatory treatment of Plaintiff Young by the Defendant ECU in the areas of disability, sexual orientation, and race.

156.    Pursuant to Chapter 116 of the North Carolina General Statutes, Defendant Chancellor Rogers is responsible for overseeing the administration of Defendant ECU's BSOM.

157.    Pursuant to Chapter 116 of the North Carolina General Statutes Defendant Chancellor Rogers is required to report on a regular basis activities and issues that affect Defendant ECU to Defendant UNC System Board.

158.    Upon information and belief, Defendant Chancellor Rogers has failed to timely report the activities that are the subject of this litigation to Defendant UNC System Board.

159.    Upon information and belief, pursuant to N.C. Gen. Stat. § 116-11 et se., Defendant UNC System Board and Defendant ECU are required to comply with and enforce the due process requirements in the constituent institutions.

160.    Upon information and belief, Defendant Chancellor Rogers, Defendant UNC System Board and Defendant Chairman Ramsey have failed to ensure that Defendant ECU has enforced and implemented the due process provision found in N.C. Gen. Stat. § 116-11 et seq.

Case 4:21-cv-00029-FL   Document 1-4   Filed 03/11/21   Page 28 of 46

161. Pursuant to N.C. Gen. Stat. § 116-44.20, Chancellor Rogers is charged with ensuring that the Code of Conduct is adhered to by Defendant ECU a constituent institution.

162. Defendant ECU has a "Nondiscrimination and Affirmative Action Policy" Policy # POL05.25.02, Sections 1.1 and 5.1, which precludes discrimination at the University on the basis of race, disability, sexual orientation, and other factors.

163. UNC System Policy Manual states in SECTION 608.STUDENTS' RIGHTS AND RESPONSIBILITIES.

(1) The University of North Carolina affirms that the first goal of each constituent institution is to educate the students admitted to its programs. The freedom of students to learn is an integral and necessary part of the academic freedom to which the University and its constituent institutions are dedicated. Each constituent institution shall provide, within allotted functions and available resources, opportunity for its students to derive educational benefits through developing their intellectual capabilities, encouraging their increased wisdom and understanding, and enhancing their knowledge and experience applicable to the effective discharge of civic, professional, and social responsibilities. **No constituent institution shall abridge either the freedom of students engaged in the responsible pursuit of knowledge or their right to fair and impartial evaluation of their academic performance.**

(2) All students shall be responsible for conducting themselves in a manner that helps to enhance an environment of learning in which the rights, dignity, worth, and freedom of each member of the academic community are respected.

(3) **In applying regulations in the area of student discipline, each constituent institution shall adhere to the requirements of due process as set forth in Section 502 D of this _Code_.**(Emphasis added.).

164. UNC System Policy Manual states in Section 502 D. Relation of the Chancellor to the Constituent Institution.

(1) Subject to policies established by the Board of Governors, the institutional board of trustees, or the president, the chancellor; shall be the leader of and the official spokesperson for the institution; shall promote the educational excellence and general

29 | P a g e

development and welfare of the institution; shall define the scope of authority of faculties, councils, committees, and officers of the institution; and all projects, programs, and institutional reports to be undertaken on behalf of the institution shall be subject to the chancellor's authorization and approval.

(2) The chancellor shall be a member of all faculties and other academic bodies of the institution and shall have the right to preside over the deliberations of any legislative bodies of the faculties of the institution.

The chancellor shall be responsible for ensuring that there exists in the institution a faculty council or senate, a majority of whose members are elected by and from the members of the faculty. The general faculty, however, which shall include at least all full-time faculty and appropriate administrators, may function as the council or senate. The faculty shall be served by a chair elected either by the general faculty or by the council or senate. However, the chancellor may attend and preside over all meetings of the council or senate. The council or senate may advise the chancellor on any matters pertaining to the institution that are of interest and concern to the faculty.

In addition to ensuring the establishment of a council or senate, the chancellor shall ensure the establishment of appropriate procedures within the institution to provide members of the faculty the means to give advice with respect to questions of academic policy and institutional governance, with particular emphasis upon matters of curriculum, degree requirements, instructional standards, and grading criteria. The procedures for giving advice may be through the council or senate, standing or special committees or other consultative means.

**(3) Subject to any policies or regulations of the Board of Governors or of the board of trustees, it shall be the duty of the chancellor to exercise full authority in the regulation of student affairs and student conduct and discipline.** In the discharge of this duty, delegation of such authority may be made by the chancellor to faculty committees and to administrative or other officers of the institution, or to agencies of student government, in such manner and to such extent as may by the chancellor be deemed necessary and expedient. **In the discharge of the chancellor's duty with respect to matters of student discipline, it shall be the duty of the chancellor to secure to every student the right to due process. Appeals from these disciplinary decisions are allowable only on the following grounds:**

**(a) A violation of due process; or**

**(b) A material deviation from the *Policy on Minimum Substantive and Procedural Standards for Student Disciplinary Procedures*, Section 700.4.1 of the UNC Policy Manual.**

Case 4:21-cv-00029-FL   Document 1-4   Filed 03/11/21   Page 30 of 46

**Where the sanction is suspension or expulsion, an appeal may be made to the board of trustees. No appeal to the president or Board of Governors is permitted.** (Emphasis added.).

165. Defendant Dean Stacy and Defendant Chancellor Rogers failed to adhere to and enforce the Defendant UNC System Board and/o Defendant ECU policies.

166. Upon information and belief, Defendant ECU's BSOM is a member and subscribes to the Association of American Medical Colleges ("AAMC"), which issued a report in March of 2017 in conjunction with the University of San Francisco College of Medicine that highlighted best practices with respect to accommodating students with disabilities in the clinical programs.

167. The Report issued by the AAMC in March of 2017 noted that a significant percentage of medical school students with disabilities felt ostracized for seeking accommodations during the clinical program, if accommodations were offered at all.

CAUSE OF ACTION ONE
VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT ("ADA")
42 U.S.C. § § 12101 ET SEQ.

168. Paragraphs 1-167 are realleged and incorporated by reference.

169. Plaintiff Young was at all times to this action, a medical student enrolled at Defendant ECU.

170. Plaintiff Young was identified as a student with disabilities while attending Defendant ECU and provided Defendant ECU's DSS with sufficient documentation upon enrollment in classes for 2017, 2018, 2019, 2020 and 2021 of such disabilities, including but not limited to developmental disorder of speech and language, [ICD code F80.9] and mixed receptive expressive language disorder [ICD code F80.2], which is an unspecified

Case 4:21-cv-00029-FL   Document 1-4   Filed 03/11/21   Page 31 of 46

language processing disorder that neurologically affects oral communication, Attention

Deficit Hyperactive Disorder ("ADHD"), and Irritable Bowel Syndrome ("IBS").

171.    Plaintiff Young's disabilities affect substantial life activities such as speech

communication and digestive bodily functions on a daily basis.

172.    Plaintiff Young has a record of physical and/or mental impairment that

substantially limits one or more major life activities.

173.    Plaintiff Young was also perceived by employees of Defendant ECU to have a

physical and/or mental impairment.

174.    Plaintiff Young is a qualified individual within the meaning of the ADA with

respect to his identified disabilities.

175.    Defendant ECU and Defendant UNC System Board state supported public entities

within the meaning and subject to the provisions of the ADA.

176.    Defendant ECU and Defendant UNC System Board provide programs and

services under the auspices of the State of North Carolina.

177.    Defendant ECU and Defendant UNC System Board are recipients of federal

funding within the meaning of the ADA.

178.    Plaintiff Young sought and received reasonable accommodations from Defendant

ECU during medical school years 1, 2, 3 and 4 for his disability ADHD related to the

provision of extended time and low distraction allowances for quizzes, tests and

examinations.

179.    Plaintiff Young sought but did not receive reasonable accommodations from

Defendant ECU during medical school years 2 and 3 for his disability IBS related to the

provision of frequent bathroom breaks, as this accommodation although disclosed in the Fall of 2019 was not added to his letter of disability by DSS until January of 2021.

180.    Plaintiff Young sought but did not receive reasonable accommodations from Defendant ECU for non-classroom based educational activities during medical school years 1, 2, 3, and 4 for his disability related to his speech and language processing disorder, specifically as it related to being allowed to utilize templates to organize his thoughts and read them during presentations as a part of the clinical program during his third (3rd) year of medical school.

181.    Plaintiff Young after making both oral and written requests for reasonable accommodations related to his speech communication and language processing disorder never received a formal written response or written plan of service to his request from Defendant ECU during year 3 or year 4.

182.    Plaintiff Young never received any reasonable accommodations for his speech communication and language processing disorder despite by told Defendant ECU's BSOM employee, Dr. Schmidt, that reasonable accommodations would be provided on a case-by-case basis during each individual clinic because the subspecialties would pose unique and different challenges during each clinic.

183.    Plaintiff Young's requests for reasonable accommodation with respect to frequent bathroom breaks did not and would not substantially alter the fundamental program of the clinics and did not and would not cause undue hardship upon the clinical programs.

184. Plaintiff Young's requests for reasonable accommodation with respect to use of a templates when making oral presentations in clinic would not alter the fundamental program of the clinic and would not cause an undue hardship upon the clinical programs.

185. As a direct and proximate result of Defendant ECU's failure to provide Plaintiff Young with reasonable accommodations he has suffered damages therefrom, including but not limited to damages for lost tuition, loss of future educational opportunities, loss of future employment opportunities, physical and mental conditions such as anxiety, mental anguish, sleeplessness, and stress.

186. Plaintiff Young has suffered damages in excess of $25,000.00 at the hands of Defendant ECU and Defendant UNC System Board.

## CAUSE OF ACTION TWO
### VIOLATION OF § 504 OF THE REHABILITATION ACT OF 1973 ("RHA") 29 U.S.C. § § 794 ET SEQ.

187. Paragraphs 1-186 are realleged and incorporated by reference.

188. Plaintiff Young is a student with disabilities enrolled at Defendant ECU as identified above.

189. Defendant ECU and Defendant UNC System Board are recipients of federal funds as defined in the RHA.

190. RHA precludes a recipient of federal funds from discriminating against an individual in a public service such as post-secondary education in a professional school on the basis of the individual's disability and/or handicapping condition.

191.    Defendant ECU and Defendant UNC System Board discriminated in their administration of programs against Plaintiff Young by failing to provide him with reasonable accommodations for his disabilities while in medical school.

192.    Defendant ECU and Defendant UNC System Board failed to provide reasonable accommodations and/or failed to oversee and ensure that reasonable accommodations were afford to Plaintiff Young.

193.    Plaintiff Young suffered damages in excess of $25,000 from the discriminatory treatment of Defendant ECU and Defendant UNC System Board, including but not limited to damages for lost tuition, loss of future educational opportunities, loss of future employment opportunities, physical and mental conditions such as anxiety, mental anguish, sleeplessness, and stress.

CAUSE OF ACTION THREE
DEPRIVATION OF EQUAL PROTECTION AND DUE PROCESS
U.S. CONST. AMEND. XIV AND NORTH CAROLINA CONSTITUTION LAW OF THE
LAW CLAUSE ARTICLE I, SECTION 19

194.    Paragraphs 1-193 are realleged and incorporated by reference.

195.    The Fourteenth Amendment to the U.S. Constitution Section 1 provides that:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

196.    The North Carolina Constitution Section 19. Law of the land; equal protection of the laws provides that:

No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by

the law of the land. No person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin.

197.     Plaintiff Young is a natural person born into the rights conferred upon him by the U.S. Constitution and the North Carolina Constitution, including but not limited to right to equal protection and due process of the law.

198.     Plaintiff Young has been denied equal protection and due process of the law by Defendant ECU through its failures to adhere to its duly promulgated policies and procedures related to enforcement of Code of Conduct violations procedures; its failure to provide all educational records to Plaintiff Young in a meaningful time (prior to hearing) such that potential exculpatory information may be utilized by Plaintiff Young; its "meeting" before the Appeals Committee record hearing whereby it discussed and considered Plaintiff Young's case before he appeared at the hearing; and its failure to provide written responses and/or develop a written plan for delivery of services for the clinical programs related to Plaintiff's specifically identified requests for reasonable accommodations associated with his disabilities.

199.     Defendant ECU's substantial and procedural due process violations caused injury to Plaintiff Young.

200.     Plaintiff Young seeks damages from Defendant ECU in an amount in excess of $25,000.

CAUSE OF ACTION FOUR
VIOLATION OF TITLE IX
20 U.S.C. § 1681 ET SEQ.

201.     Paragraphs 1-200 are realleged and incorporated by reference.

202.    Title IX provides that:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial funds, 20 U.S.C. § 1681(a).

203.    Under Title IX, discrimination "on the basis of sex" includes on the basis of sexual orientation or perceived sexual orientation.[3]

204.    Defendant ECU and Defendant UNC System Board, which oversees the operation of Defendant ECU are education programs receiving federal financial assistance.

205.    Defendant ECU discriminated against Plaintiff Young based upon his perceived sexual orientation and has denied him the benefit of, and subjected him to discrimination in educational programs and activities at Defendant UNC System Board's constituent campus, Defendant ECU, which violates Plaintiff Young's rights under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq.

206.    Plaintiff Young has suffered damages as a result of the discrimination of Defendant ECU and Defendant UNC System Board in excess of $25,000, including but not limited to damages for lost tuition, loss of future educational opportunities, loss of future employment opportunities, physical and mental conditions such as anxiety, mental anguish, sleeplessness, and stress.

CAUSE OF ACTION FIVE
VIOLATION OF TITLE VI OF THE CVIL RIGHTS ACT OF 1964
42 U.S.C. § 2000d ET SEQ.

---

[3] The United States Supreme Court recently decided that the term "sex" as defined in Title VII of the Civil Rights Act of 1964 incorporates the term "sexual orientation" in an employment discrimination case. *Bostock v. Clayton County*, No. 17-1618, 723 Fed. Appx. 964, reversed and remanded; No. 1623, 883 F.3d 100, and No. 18-107, 884 F.3d 560, affirmed (June 15, 2020, U.S. Supreme Ct.).

Case 4:21-cv-00029-FL   Document 1-4   Filed 03/11/21   Page 37 of 46

207. Paragraphs 1- 206 are realleged and incorporated by reference.

208. Title VI of the Civil Right Act of 1964 provides that:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance., 42 U.S.C. §2000d et seq.

209. Under Title VI, discrimination "on the ground of race is prohibited."

210. Plaintiff Young is an African American male fourth (4th) year medical student at Defendant ECU.

211. Defendant ECU and Defendant UNC System Board, which oversees the operation of Defendant ECU are education programs receiving federal financial assistance.

212. Defendant ECU discriminated against Plaintiff Young based upon his race, African American and has denied him the benefit of, and subjected him to discrimination in educational programs and activities at Defendant UNC System Board's constituent campus, Defendant ECU, which violates Plaintiff Young's rights under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.

213. Plaintiff Young has suffered damages as a result of the discrimination of Defendant ECU and Defendant UNC System Board in excess of $25,000, including but not limited to damages for lost tuition, loss of future educational opportunities, loss of future employment opportunities, physical and mental conditions such as anxiety, mental anguish, sleeplessness, and stress.

CAUSE OF ACTION SIX
RETALIATION

214. Paragraphs 1- 213 are realleged and incorporated by reference.

215.     Defendant ECU, Defendant Dean Stacy, Defendant Dr. Susan Keen, and

Defendant Dr. Nadine Skinner retaliated against Plaintiff Young in violation of Title II of

the ADA of 1990, Section 504 of RHA of 1973, Title IX of the Amendment to the

Education Act of 1972, and Title VI of the Civil Rights Act of 1964.

216.     For appealing the discriminatory grade given to him by Defendant Dr. Susan

Keen and Defendant Dr. Nadine Skinner on the basis of sexual orientation and race;

appealing the discriminatory expulsion issued by Defendant Dean Stacy sustaining the

discriminatory treatment on the basis of disability, sexual orientation and race; and

challenging Defendant ECU's BSOM discrimination against him for seeking reasonable

accommodations of his disabilities in the clinical programs Plaintiff Young was the

victim of retaliation for lawfully exercising his rights to appeal and/or challenge

discriminatory treatment.

217.     Defendant ECU, Defendant Dean Stacy, Defendant Dr. Susan Keen, and

Defendant Dr. Nadine Skinner are the perpetrators of the actions of retaliation in that they

initiated, sanctioned or approved of the discrimination complained of herein and took

affirmative actions to institute Plaintiff Young's dismissal from Defendant ECU's

BSOM.

218.     Plaintiff Young harm and suffered damages in excess of $25,000.00 due to

Defendant ECU's, Defendant Dean Stacy's, Defendant Dr. Susan Keen's, and Defendant

Dr. Nadine Skinner's retaliatory actions.

CAUSE OF ACTION SEVEN
CIVIL CONSPIRACY

219.     Paragraphs 1 – 218 are realleged and incorporated by reference.

Case 4:21-cv-00029-FL   Document 1-4   Filed 03/11/21   Page 39 of 46

220.     Defendant Dr. Susan Keen, Defendant Dr. Nadine Skinner and Defendant Dean Stacy conspired and/or took affirmative steps to cause Plaintiff Young to fail Family Medicine and be expelled from the Defendant ECU's BSOM in violation Plaintiff Young's equal protection and due process rights under the North Carolina Constitution Section 19, Law of Land Clause.

221.     Defendant Dr. Susan Keen, Defendant Dr. Nadine Skinner, and Defendant Dean Stacy conducted a lawful acts such as grading, evaluating, and hearing the appeal of Plaintiff Young, but each of conduct those acts in an unlawful manner.

222.     Defendant Dr. Susan Keen, Defendant Dr. Nadine Skinner, and Defendant Dean Stacy a common plan and/or scheme to cause Plaintiff Young's failure and ultimate expulsion from Defendant ECU's BSOM in violation of Plaintiff Young's rights.

223.     As a direct and proximate result of Defendant Dr. Susan Keen, Defendant Dr. Nadine Skinner, and Defendant Dean Stacy actions Plaintiff Young was improperly and discriminatory expelled from Defendant ECU's BSOM.

224.     Plaintiff Young suffered damages in excess of $25,000 as a result of civil conspiracy of Defendant Dr. Susan Keen, Defendant Dr. Nadine Skinner, and Defendant Dean Stacy.

## CAUSE OF ACTION EIGHT
## BREACH OF CONTRACT

225.    Paragraphs 1 – 224 are realleged and incorporated by reference.

226.    Plaintiff Young applied to, was accepted in, enrolled in, and paid tuition to

Defendant ECU for attendance and education at the Brody School of Medicine

("BSOM").

227.    Defendant ECU's offer of admittance and acceptance of enrollment and payment

of tuition by Plaintiff Young constituted a contract to provide Plaintiff Young with a

medical school education consistent with the laws State and Federal laws.

228.    Defendant ECU had a duty of care under this contract to comply with all State

and Federal laws, including but not limited to anti-discrimination laws and its own anti-

discrimination policies.

229.    Defendant ECU breached their duty of care to follow the anti-discrimination laws

and/or its own anti-discrimination policies.

230.    As a direct and proximate result of Defendant ECU's breach of this contractually

imposed duty of care, Plaintiff Young was harmed.

231.    Plaintiff Young has suffered damages in excess of $25,000 from the breach of

Defendant ECU's contract.


## CAUSE OF ACTION NINE
## TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND
## PERMANENT INJUNCTION

232.    Paragraphs 1 – 231 are realleged and incorporated by reference.

Case 4:21-cv-00029-FL   Document 1-4   Filed 03/11/21   Page 41 of 46

233.    Plaintiff Young seeks a Temporary Restraining Order, Preliminary Injunction and
Permanent Injunction pursuant to North Carolina Rule of Civil Procedure 65 and N.C.
Gen. Stat. § 1-485.

234.    Subject matter jurisdiction is conferred upon the Court consistent with *Revelle v.
Chamblee*, 168 N.C. App. 227, 230-231, 606 S.E.2d 712, 714 (2005), as the Verified
Complaint has been filed with the Pitt County Clerk of Superior Court and the request for
injunctive relief is sought therein.

235.    Plaintiff has made claims for discrimination based on disability, sexual
orientation, race, retaliation, equal protection, Roger's, Defendant Chairman Ramsey,
Defendant Dean Stacy's, Defendant Dr. Keen's and Defendant Dr. Skinner's intentional
and/or negligent acts or inactions against Plaintiff Young.

236.    As a result of the intentional and negligent acts or inactions of the Defendants,
Plaintiff Young has been expelled from Defendant ECU's medical school during his
fourth (4th) and final year whereby he is scheduled to graduate in May of 2021.

237.    Plaintiff Young has a demonstrate objective record of satisfactory performance
while attending Defendant ECU's BSOM.

238.    Plaintiff Young based upon the record at bar is likely to succeed on the merits as
to the wrongful dismissal from the medical program based upon equal protection and due
process and a fair reading of the BSOM's policies and procedures with respect to
grading, academic performance and professionalism.

239.    Plaintiff Young will likely succeed on the merits of his claims of discrimination
on the basis of disability, sexual orientation, race and retaliation related thereto.

240. North Carolina State Courts and Federal Courts have long held that a deprivation of education is a substantive right. See, *Givens v. Poe*, 346 F.Supp. 202 (1972).

241. Plaintiff Young is in his fourth and final year of medical school and is slated to graduate in May 2021.

242. Defendant ECU will suffer no substantial adverse impact by allowing Plaintiff Young to continue his education during the pending litigation of these matters whereas the delay in Plaintiff Young's education will hamper his ability to obtain admission to quality residency programs, reduce his earning potential and impede the flow of his studies.

243. Based upon the foregoing Plaintiff Young is likely to succeed on the merits such that the Court should issue a temporary restraining order, preliminary injunction and permanent injunction enjoining Defendant ECU unenrolling Plaintiff Young from the Brody School of Medicine pending the outcome of this litigation.

WHEREFORE Plaintiff Young prays unto the Court to enter an Order and Judgment for the following:

1. That Defendant ECU and Defendant UNC System Board have violated Title II of the ADA of 1990 and that Plaintiff Young be awarded damages commiserate therewith;

2. That Defendant ECU and Defendant UNC System Board have violated Section 504 of the RHA of 1973 and that Plaintiff Young be awarded damages commiserate therewith;

3. That Defendant ECU and Defendant UNC System Board have violated the Equal Protection and Due Process Clause of the Fourteenth Amendment of the U.S.

Case 4:21-cv-00029-FL   Document 1-4   Filed 03/11/21   Page 43 of 46

Constitution and the Law of the Land Clause in Section 19 of the North Carolina

Constitution and that Plaintiff Young be awarded damages commiserate therewith;

4. That Defendant ECU and Defendant UNC System Board have violated Title IX of the

   Education Act of 1972 and that Plaintiff Young be awarded damages commiserate

   therewith;

5. That Defendant ECU and Defendant UNC System Board have violated Title VI of the

   Civil Rights Act of 1964 and that Plaintiff Young be awarded damages commiserate

   therewith;

6. That Defendant ECU, Defendant Dean Stacy, Defendant Dr. Susan Keen, and Defendant

   Dr. Nadine Skinner retaliated against Plaintiff Young in violation of the anti-

   discrimination laws cited herein and that Plaintiff Young be awarded damages

   commiserate therewith;

7. That Defendant Dean Stacy, Defendant Dr. Susan Keen, and Defendant Dr. Nadine

   Skinner have engaged in a civil conspiracy and that Plaintiff Young be awarded damages

   commiserate therewith;

8. That Defendant ECU breached its contract with Plaintiff Young and that Plaintiff Young

   be awarded damages commiserate therewith;

9. That Plaintiff Young have and recover damages in excess of $25,000 for each cause of

   action contained within this Verified Complaint; and

10. That the Court order such other relief and it deems just and proper, including but not

    limited to attorney's fees and costs, as permitted by law or statute.

11. Plaintiff Young demands trial by jury.

This the 3rd day of March, 2021.

BOWENS & AVERHART, PLLC

Stephon J. Bowens
North Carolina State Bar No.: 20876
555 Fayetteville Street, Suite 300
Raleigh, North Carolina 27601
(919) 741-6798 Office
(888) 686-0456 Facsimile
stephon@bowens-averhart.com

*Attorneys for Plaintiff Young*

## VERIFICATION OF COMPLAINT

STATE OF _Maryland_
COUNTY OF _Howard_

I, Alexander Joseph Young, being duly sworn, deposes and says: That I am the Plaintiff in the foregoing action filed in the Superior Court of Pitt County, North Carolina. That I am above the age of majority; that I am duly authorized to make the averments contained in the Complaint; that I hereby verify the statements made therein; that I suffer from no known mental or physical affliction that may preclude or otherwise impair my judgment; and that I have read the foregoing Complaint and know the same to be true except as to any matter or thing alleged upon information and belief, and as to any such matter or thing I verily believe it to be true.

This the _03_ day of March, 2021.

_Alexander J. Young_
Alexander Joseph Young, Plaintiff

Acknowledged, sworn and subscribed before me this
the _03_ day of _March_, 202_1_.

_____
SIGNATURE OF NOTARY PUBLIC

_____
NOTARY PUBLIC

(Typed or Printed Name)

NOTARY PUBLIC
HOWARD COUNTY
STATE OF MARYLAND
My Commission Expires June 11, 2024

MY COMMISSION EXPIRES: _____

(NOTARY SEAL)